# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Raymond P. Moore

Civil Action No. 1:18-cv-02329-RM-MEH

ERIK M. UNDERWOOD, a Colorado citizen, and,
MY24HOURNEWS.COM, INC., a Colorado corporation,

    Plaintiffs,

v.

BANK OF AMERICA CORPORATION, a Delaware corporation,

    Defendant.

___

**ORDER**
___

This matter is before the Court on Defendant's motion for summary judgment (ECF No. 74). The Court grants the motion for the reasons below and denies as moot Defendant's motion for a hearing (ECF No. 124) and motion to strike (ECF No. 130).

## I.    LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in his favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). However, "if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a

lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1143-44 (10th Cir. 2013). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

## II. BACKGROUND

Plaintiff Underwood registered his E.R.I.C.A. service mark with the state of Georgia in October 2010 and licensed it to Plaintiff My24HourNews.Com, Inc. Defendant applied to register its ERICA mark with the Untied States Patent and Trademark Office in October 2016, and it was registered in July 2018.

When Plaintiffs learned about Defendant's use of its mark in May 2018, they sent Defendant two cease and desist letters. Defendant refused to stop using its mark, and Plaintiffs filed this lawsuit in September 2018, asserting claims for (1) false association under the Lanham Act, (2) common law service mark infringement, (3) common law unfair competition, (4) violation of the Colorado Consumer Protection Act ("CCPA"), and (5) service mark infringement under Georgia law. Defendant filed six counterclaims, seeking cancellation of Plaintiff Underwood's registration and declaratory relief.

On August 16, 2019, this Court granted Defendant's motion for partial summary judgment on its first counterclaim, ordering cancellation of the Georgia registration and

declaring it void ab initio. (ECF No. 110.) In determining that Plaintiffs had failed to satisfy the prerequisites for Georgia registration, the Court did not reach the issue of whether Plaintiffs had presented sufficient evidence of "analogous use" that would establish priority over Defendant's use of its mark. (*Id.* at 8 n.8.) On that basis, Defendant now moves for summary judgment and dismissal of the entire case.

## III. DISCUSSION

Plaintiffs' first three claims depend on their asserted service mark rights.[1] To prevail on these claims, Plaintiffs must establish that (1) their mark is protectable, and (2) Defendant's use of an identical or similar mark is likely to cause confusion among consumers. *See Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004). Because Plaintiffs' service mark is not registered, Plaintiffs bear the burden of establishing that it is protectable. *See Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008). "[T]he right to a particular mark grows out of its use, not its mere adoption." *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97, (1918). "It is axiomatic in trademark law that the standard test of ownership is priority of use. . . . [T]he party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Dalkita, Inc. v. Distilling Craft, LLC*, 356 F. Supp. 3d 1125, 1136-37 (D. Colo. 2018) (quotation omitted)). "To be protectable, a mark must be capable of distinguishing the products or services it marks from those of others." *Donchez*, 392 F.3d at 1216 (quotation omitted).

---

[1] The standards for protection of service marks and trademarks are identical. *See Murphy v. Provident Mut. Life Ins. Co.*, 923 F.2d 923, 927 (2d Cir. 1990).

Where, as here, trademark rights are asserted before actual sales have occurred, "the party seeking to establish ownership of a trademark has been required to show use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Dalkita*, 356 F. Supp. 3d at 1138 (quotation omitted). Such "analogous use" of a mark may be sufficient to establish prior rights "as long as the use is open and notorious or is of such a nature and extent that the mark has become popularized in the public mind." *Int'l Health Exch., Inc. v. Global Healthcare Exch., Inc.*, 470 F. Supp. 2d 365, 371 (S.D.N.Y. 2007) (quotation omitted). Thus, in the absence of sales, "advertising alone may satisfy the commercial use requirement . . . if the party's promotional activities are of sufficient clarity and repetition to create the required identification and have reached a substantial portion of the public that might be expected to purchase the good or service." *Dalkita*, 356 F. Supp. 3d at 1138 (quotation omitted).

Although the parties devote much attention to the issue of whether Plaintiffs' website, my24erica.com, was hosted before October 2016, when Defendant applied to register its mark, the Court need not resolve that issue for the purpose of ruling on Defendant's motion for summary judgment. Because even assuming Plaintiffs' website was hosted before October 2016, the Court finds Plaintiffs have failed to adduce evidence sufficient to show that they used their E.R.I.C.A. mark in commerce before October 2016.

First, it is undisputed that no customers purchased goods or services offered under the mark; nor have Plaintiffs generated any revenue from their use of the mark. Indeed, Plaintiffs have not shown that they ever used their mark with any service that "verbally tells the news and

4

current events through cell phone and computer applications," as described in the Georgia registration. (ECF Nos. 74 at 2; 122 at ¶ 3.)

Second, Plaintiffs have not presented evidence of any promotional activities, including hosting of the website, demonstrating that a substantial share of the consuming public was reached or came to identify the E.R.I.C.A. mark with their services. *See Dalkita*, 356 F. Supp. 2d at 1139 n.9. Because Plaintiffs' evidence falls well short of the standards mentioned above, Defendant is entitled to summary judgment on Plaintiffs' service mark claims.

Plaintiffs assert that the my24erica.com website received 772 "likes" on Facebook. But this is insufficient to support an inference that their use of the E.R.I.C.A. mark had a substantial impact on the consuming public. *See id.* at 1138. Indeed, there is no evidence that anyone who visited the website observed the mark or interacted with the "personal assistant informational avatar" Plaintiffs call E.R.I.C.A (ECF No. 1 at ¶ 14), much less that they identified the mark with Plaintiffs' services.

Plaintiffs' reliance on "a video demo presentation" in 2010, another presentation in 2012, and its sending of "hundreds of packages . . . of discs that contained the E.R.I.C.A. animation" is also unavailing. (ECF No. 112 at 17.) There is no evidence these promotional activities created a sufficient association in the public mind between Plaintiffs' mark and the services they were providing. *Cf. New W. Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1200 (9th Cir. 1979) (finding sufficiently public use of a mark where 430,000 individuals received a subscription mailing). Nor are Plaintiffs' conclusory allegations regarding "beta testing" sufficient to show such an association. In the absence of any evidence about the nature and scope of such testing, there is no genuine issue as to whether it had a substantial impact on the consuming public.

*See Gameologist Grp., LLC v. Sci. Games Int'l, Inc.*, 838 F. Supp. 2d 141, 155 (S.D.N.Y. 2011) (finding limited advertising and promotion "was not sufficiently widespread or intensive to establish 'use in commerce' under the Lanham Act"). For advertising or promotion activities to qualify as use in commerce, they "must be open and notorious or of such a nature and extent that the mark has become popularized in the public mind." *Id.* (quotation omitted).

Accordingly, the Court concludes that Defendant is entitled to summary judgment on Plaintiffs' trademark claims. The Court declines to exercise pendant jurisdiction of Plaintiffs' CCPA claim, which is dismissed without prejudice. Assuming Plaintiff's infringement claim under Georgia law has any viability in the absence of a valid registration, the Court declines to exercise jurisdiction of that claim as well, and it is dismissed without prejudice.

## IV. CONCLUSION

Therefore, the Court GRANTS the motion for summary judgment (ECF No. 74). Plaintiffs first three claims are DISMISSED WITH PREJUDICE, and the remaining state claims are DISMISSED WITHOUT PREJUDICE. The Court DENIES AS MOOT the other pending motions (ECF Nos. 124, 130), and directs the Clerk to CLOSE this case.

DATED this 10th day of February, 2020.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge